UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HEALTHEDGE SOFTWARE, INC., | * | |
| Plaintiff and Counterdefendant, | * | |
| v. | * | Civil Action No. 19-cv-11020-ADB |
| SHARP HEALTH PLAN, | * | |
| Defendant and Counterclaimant. | * | |

**<u>MEMORANDUM AND ORDER ON CROSS-MOTIONS TO COMPEL</u>**

BURROUGHS, D.J.

In this case, Plaintiff HealthEdge Software, Inc. ("HealthEdge") seeks a declaratory judgment that it did not breach its contracts with Defendant Sharp Health Plan ("Sharp"). [ECF No. 1 ("Compl.")]. Sharp has countersued, alleging that HealthEdge breached its contractual obligations and also engaged in fraud. [ECF No. 21-1 ("Ans.")]. Currently before the Court is Sharp's motion to compel HealthEdge to produce documents in response to multiple requests for production, [ECF No. 35-1], and HealthEdge's cross-motion to compel Sharp to disclose how it collected and searched its electronically stored information ("ESI"), [ECF No. 37-3]. For the reasons set forth below, HealthEdge's motion is <u>GRANTED</u>, and Sharp's motion is <u>GRANTED</u> in part and <u>DENIED</u> in part.

**I.   BACKGROUND**

Sharp provides health care service plans and related administrative services. [Ans. ¶ 51]. In 2014, after assessing its software systems, Sharp concluded that it needed an upgrade. [Id. ¶ 54]. Accordingly, it issued a request for proposal (the "RFP") to multiple software vendors.

[Id.].  HealthEdge, a software company specializing in software for health plans, responded to the RFP.  [Id. ¶¶ 52, 56].  The parties eventually entered into two agreements: a software as a service agreement (the "SAAS") and a professional services agreement (the "PSA").  [Id. ¶¶ 59–60].  Under the SAAS, Sharp agreed to use HealthEdge's software to administer its health plans.  [Id. ¶ 59].  Under the PSA, it was contemplated that the parties would execute one or more Statements of Work ("SOWs") for the provision of professional services in connection with the implementation of HealthEdge's software.  [Id. ¶ 60].  The parties entered into two SOWs.  [Id. ¶ 63].  Pursuant to the first, HealthEdge determined what work would be required to integrate certain aspects of its software into Sharp's existing system, and pursuant to the second ("SOW 2"), HealthEdge performed that work.  [Id.].  Sharp contends that the work took far longer than expected and that HealthEdge's software was deficient.  [Id. ¶¶ 49, 64].  HealthEdge admits that the implementation took longer and was costlier than was estimated, but maintains that it did not breach its contracts and that Sharp approved of all billed work.  [Compl. ¶¶ 17–18].

On April 30, 2019, HealthEdge sued Sharp, seeking a declaratory judgment that it complied with its obligations under the SAAS, the PSA, and SOW 2.  [Compl.].  After an unsuccessful motion to dismiss for lack of personal jurisdiction, see [ECF No. 6 (motion); ECF No. 14 (Order denying motion)], Sharp answered and counterclaimed, [Ans.].  In its counterclaims, Sharp asserts that HealthEdge breached the parties' contracts and that HealthEdge's response to the RFP contained fraudulent statements—essentially, overstatements regarding HealthEdge's software's capabilities—designed to induce Sharp to hire HealthEdge. [Id. ¶¶ 65–107].

On April 9, 2021, Sharp filed its motion to compel, [ECF No. 35-1], and on April 12, 2021, HealthEdge opposed and filed a cross-motion, [ECF No. 37-3]. Subsequently, Sharp filed an opposition to HealthEdge's cross-motion, [ECF No. 40], and a reply in further support of its own, [ECF No. 43-1]. Pursuant to the operative Scheduling Order, fact discovery is set to close on August 1, 2021. [ECF No. 27 ¶ 3].

II.     **LEGAL STANDARD**

> Cooperation in a transparent discovery process is the path to efficient, cost-effective litigation and achieves the purpose of the federal discovery rules; that being, to reduce gamesmanship and to insure forthright sharing of all parties to a case with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness as much as practicable. The 2006 amendments to Fed. R. Civ. P. 26(f) encourage cooperation and transparency early in the discovery process by requiring the parties to discuss at their initial conference any issues about preserving discoverable information and any issues about disclosure or discovery of electronically stored information. The Rule anticipates a sharing of facts and, if necessary, discovery about the sources to be searched for ESI. For some time now, federal courts have insisted on a collaborative approach to discovery, recognizing that this attitude best achieves the spirit and purposes of the federal discovery rules. Parties and attorneys that refuse to work collaboratively with their adversaries are at odds with the federal system and have been routinely sanctioned. The obligation on the parties to meet and confer early in the case includes a discussion that can and should include cooperative planning, rather than unilateral decision-making, about matters such as the sources of information to be preserved and searched; number and identities of custodians whose data will be preserved or collected . . . ; topics for discovery; [and] search terms and methodologies to be employed to identify responsive data. When two-way planning does not occur upfront, and questions about the adequacy of the document production subsequently arise, common sense dictates that the party conducting the search must share information regarding the universe of potentially relevant documents being preserved, and those that no longer exist, as well as the search terms used in collecting relevant documents and the identities of the custodians from whom the documents were retrieved. After all, the party responsible for the search and production has the duty to demonstrate its reasonableness.

<u>Burnett v. Ford Motor Co.</u>, No. 13-cv-14207, 2015 WL 4137847, at *8 (S.D.W. Va. July 8, 2015) (alterations in original) (citations and internal quotation marks omitted).

Pursuant to Federal Rule of Civil Procedure 26(b), parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and

3

proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Enargy Power (Shenzhen) Co. v. Wang, No. 13-cv-11348, 2014 WL 4687784, at *2 (D. Mass. Sept. 17, 2014) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). "District courts exercise broad discretion to manage discovery matters," Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003), and "to tailor discovery narrowly," Cutter v. HealthMarkets, Inc., No. 10-cv-11488, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) (quoting Crawford-El v. Britton, 523 U.S. 574, 598 (1998)). When exercising this discretion, courts are mindful of the proportionality considerations articulated in Rule 26(b)(1). Fed. R. Civ. P. 26(b)(1).

> A court must limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues.

In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., No. 13-md-02419, 2014 WL 12814933, at *2 (D. Mass. Feb. 7, 2014); see also Fed. R. Civ. P. 26(b)(2)(C). The party resisting discovery bears "the burden of showing some sufficient reason why discovery should not be allowed." Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc., 730 F. Supp. 1165, 1186 (D. Mass. 1989) (quoting Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976)).

III.   DISCUSSION

Sharp identifies a number of purported deficiencies with HealthEdge's discovery practices, including: (1) engaging in a flawed ESI collection without prior consultation with

4

Sharp; (2) lodging boilerplate relevance, burden, and vagueness objections; (3) withholding its source code as a confidential trade secret despite a protective order; and (4) inappropriately asserting attorney work product privilege. [ECF No. 36-5 at 13–23]. HealthEdge maintains that it has complied with its discovery obligations and counters that Sharp has failed to be transparent concerning its own ESI collection. [ECF No. 37-3 at 6–13].

### A.   ESI

This case is a prime example of the discovery issues that can arise when the parties (and their counsel) fail to engage in cooperative planning regarding ESI. See Ruiz-Bueno v. Scott, No. 12-cv-00809, 2013 WL 6055402, at *3 (S.D. Ohio Nov. 15, 2013). In short, instead of working collaboratively to

> come up with reasonable search terms, then working together to refine those search terms, and then cooperatively engaging in sampling and further refinement of those search terms so that relevant documents are uncovered and produced, or cooperatively engaging in any of the numerous other e-discovery techniques that could lessen the discovery burdens on both parties, the [parties] have instead sought to turn the discovery process in this case into a legal variety of hand-to-hand combat.

UnitedHealthcare of Fla., Inc. v. Am. Rental Assocs. LLC, No. 16-cv-81180, 2017 WL 4785457, at *3 (S.D. Fla. Oct. 20, 2017). Rather than deciding the instant motions based on the incomplete record before it,[1] the Court will provide the parties with another opportunity to resolve their disputes, which will hopefully obviate the need for additional judicial intervention. Accordingly, as described below, the parties are directed to meet and confer to discuss custodians and search terms for ESI collection and review.

---

[1] Among other things, the record lacks information regarding (1) how costly and time-consuming it would be for HealthEdge to review the documents it proposes reviewing; (2) how costly and time-consuming it would be for HealthEdge to review the documents Sharp wants it to review; and (3) which custodians' documents Sharp collected and how it filtered its initial collection to create its proposed review universe.

With respect to HealthEdge's documents, Sharp shall provide HealthEdge with a proposed collection and search protocol, including a list of custodians and search terms. In crafting this proposed protocol, the Court encourages Sharp to keep in mind that requiring HealthEdge to review hundreds of thousands of documents in this litigation is likely to be unduly burdensome and/or disproportional to the needs of the case. See generally Fed. R. Civ. P. 26(b). Then, depending on how many hits are generated using Sharp's proposed protocol, HealthEdge shall either review the hits (and produce responsive, non-privilege documents) or make a counterproposal. In making a counterproposal, HealthEdge should note that given Sharp's allegations of fraud, HealthEdge's position that it need review and produce only communications involving Sharp (or documents directly referencing Sharp) is untenable. Sharp is entitled to probe HealthEdge's state of mind in connection with the allegedly fraudulent representations contained in its response to the RFP, and it is possible that documents and communications not involving or directly concerning Sharp may be relevant to that issue.[2]

With respect to Sharp's documents, Sharp shall promptly disclose to HealthEdge (1) which custodians' documents were collected and (2) precisely how it filtered those documents to arrive at its proposed review universe (i.e., date ranges, search terms, de-duping methods, etc.). Sharp's argument that its search terms are protected by the attorney work product privilege is unavailing. See FormFactor, Inc. v. Micro-Probe, Inc., No. 10-cv-03095, 2012 WL 1575093, at *7 n.4 (N.D. Cal. May 3, 2012) ("To the extent Plaintiff argues that disclosure of search terms would reveal privileged information, the Court rejects that argument."); cf. United States v. Cadden, No. 14-cr-10363, 2015 WL 5737144, at *2–3 (D. Mass. Sept. 30, 2015)

---

[2] The Court notes that Sharp may be able to obtain this information in a more efficient manner through one or more Federal Rule of Civil Procedure 30(b)(6) depositions.

(rejecting argument, in criminal case, that search terms were protected from disclosure).  If HealthEdge is satisfied with Sharp's collection and proposed review universe, Sharp shall review the documents and produce those that are responsive and non-privileged.  If HealthEdge believes Sharp's collection and/or filtering methodology was deficient, the parties shall engage in good faith negotiations to agree upon a collection and review protocol (following the general blueprint described above).

If, after engaging in good faith efforts to agree on ESI protocols, there is an impasse necessitating judicial resolution, each party shall include in its moving papers (1) its proffered protocol and (2) information that will aid the Court in determining, with specificity, how burdensome a document review based on that protocol would be.

**B.     Boilerplate Objections**

As to HealthEdge's generalized objections, the Court notes that "[b]oilerplate generalized objections are inadequate and tantamount to not making any objection at all."  Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999).  Accordingly, to the extent HealthEdge intends to stand by its objections and withhold documents based on relevance, burden, and/or vagueness, it must articulate precisely why a particular discovery request calls for irrelevant information or uses vague terms and/or why responding to it would be unduly burdensome.  See Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc., 319 F.R.D. 422, 427 (D.P.R. 2016) ("The objecting party 'must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive.'" (quoting Sánchez-Medina v. UNICCO Serv., Co., 265 F.R.D. 24, 27 (D.P.R. 2009))).  Additionally, if HealthEdge has asserted an objection to a given request for production

but has not actually withheld any documents on that basis, it should make that fact clear to Sharp.

      **C.**      **Source Code**

As to HealthEdge's source code, HealthEdge has failed to address why the Confidentiality Stipulation governing disclosure of confidential information in this case, [ECF No. 31], is insufficient to protect its valuable proprietary information, see [ECF No. 37-3 at 11–12 (discussing source code without referencing protective order)]. Given Sharp's allegation that HealthEdge's software was deficient, [Ans. ¶ 49], HealthEdge's code is relevant to this litigation. Accordingly, HealthEdge must produce its source code. If it believes that the existing Confidentiality Stipulation is insufficiently robust, the Court encourages the parties to negotiate an amendment providing additional protection.

      **D.**      **Attorney Work Product**

Finally, as to HealthEdge's objections based on the attorney work product privilege, the relevant requests for production are, in essence, contention interrogatories. See [ECF No. 36-5 at 22 (Request for Production No. 63 calling for "All DOCUMENTS upon which [HealthEdge] relies in support of its denials set forth in its answer to the [Sharp] counterclaim"); id. (Request for Production No. 64 calling for "All DOCUMENTS upon which [HealthEdge] relies in support of its affirmative defenses set forth in its answer to the [Sharp] counterclaim")]; Kleppinger v. Tex. Dep't of Transp., No. 10-cv-00124, 2012 WL 12893651, at *16 (S.D. Tex. Mar. 4, 2012) (discussing contention interrogatories and noting that "courts have interpreted Rule 34 to allow discovery of 'contention' type documents, specifically those documents supporting affirmative defenses"). Although HealthEdge must eventually respond to these requests, at this point, the requests are premature, particularly given that HealthEdge has not yet reviewed its own

documents (or received Sharp's document production).  HealthEdge is therefore not in a position to exhaustively identify all documents supporting its claims and contentions.  Under Federal Rule of Civil Procedure 33(a)(2), the Court may order that such discovery requests need not be responded to until later in the litigation.  Fed. R. Civ. P. 33(a)(2).  Thus, Sharp may renew these requests for production at the close of discovery, at which point HealthEdge shall respond.

IV. **CONCLUSION**

For the reasons stated above, HealthEdge's motion, [ECF No. 37-3], is GRANTED, and Sharp's motion, [ECF No. 35-1], is GRANTED in part and DENIED in part.

**SO ORDERED.**

May 6, 2021                                                                 /s/ Allison D. Burroughs
                                                                                               ALLISON D. BURROUGHS
                                                                                               U.S. DISTRICT JUDGE